**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **In re:** | **Case No. 17-31327-KRH** |
| **Michelle Hawkins** | **Chapter 13** |
| **Debtor** | |

Address:  P.O. Box 38233
          Henrico, VA 23231

Last four digits of SSN: xxx-xx-8142

## <u>NOTICE OF MOTION FOR AUTHORITY TO</u><br><u>MODIFY EXISTING MORTGAGE AND NOTICE OF HEARING</u>

The above named Debtor has filed a Motion for Authority to Modify Existing Mortgage in this bankruptcy case, pursuant to Local Bankruptcy Rule 6004-4.

**<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then within twenty-one (21) days of the date of this notice, you or your attorney must:

▪     File with the court, at the address shown below, a written response pursuant to Local Bankruptcy Rules 9013-1(H).  If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

         Clerk of Court
         United States Bankruptcy Court
         701 E. Broad Street,  Suite 4000
         Richmond, VA 23219-3515

▪     You must also send a copy to:

         Boleman Law Firm, P.C.
         P. O. Box 11588
         Richmond, VA 23230-1588

Stephen F. Relyea (VSB #77236)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, VA 23230-1588
Telephone: (804) 358-9900
Counsel for Debtor

- **Attend the hearing on the motion scheduled to be held on September 26, 2018 at 12:00 p.m. before the Honorable Kevin R. Huennekens, United States Bankruptcy Court, 701 E. Broad Street, Room 5000, Richmond, VA 23219.**

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Pursuant to Local Bankruptcy Rule 6004-4, notice is hereby given that the terms of the proposed subject loan modification are as follows:

- The previous principal balance of the loan was $135,183.27, and the principal balance of the loan immediately after modification will be $144,027.13;
- The interest rate applicable to the loan before modification is 2.625%, and the interest rate of the loan immediately after modification will be 3.875%;
- The term of the loan before modification is 276 months, with a maturity date on May 1, 2038, and the term of the loan immediately after modification will be 480 months, with a maturity date on July 1, 2058;
- The monthly principal & interest portion of the mortgage payment before modification is $690.21, and the monthly principal & interest portion of the mortgage payment immediately after modification will be $493.88 (these amounts do not include payment for any items other than principal & interest);
- The loan modification will result in a lower monthly mortgage payment. However, Debtor does not anticipate increasing the monthly Plan payment due to changes in income and expenses;
- The modified loan does not include any future payment changes; and
- The modified loan does include future balloon payments. $23,627.13 will be due upon maturity of the loan. This amount will not accrue interest.

Respectfully submitted,

MICHELLE HAWKINS

By Counsel:

 /s/ Stephen F. Relyea
Stephen F. Relyea (VSB #77236)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, Virginia 23230-1588
Telephone: (804) 358-9900
Counsel for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 31, 2018</u>, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to Debtor, the Chapter 13 trustee, and to creditors or parties in interest who have requested all notices in the case at the addresses listed below (if applicable).

<u>/s/ Stephen F. Relyea</u>
Counsel for Debtor


Federal National Mortgage Association
c/o Seterus, Inc.
P.O. Box 1047
Hartford, CT  06143

Lauren Friend McKelvey, Esq.
Odin, Feldman & Pittleman, PC
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
VIA ECF NOTIFICATION

Jon Michael Ahern, Esq.
Sykes, Bourdon, Ahern & Levy, P.C.
281 Independence Blvd. 5th Floor
Virginia Beach, VA 23462
VIA ECF NOTIFICATION

Case 17-31327-KRH   Doc 35   Filed 08/31/18   Entered 08/31/18 10:51:10   Desc Main
Document     Page 4 of 14

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:                                                            Case No. 17-31327-KRH
Michelle Hawkins                                                          Chapter 13
     Debtor

### MOTION FOR AUTHORITY TO MODIFY EXISTING MORTGAGE

COMES NOW, Michelle Hawkins (the "Debtor"), by counsel, and files this Motion

for Authority to Modify Existing Mortgage pursuant to 11 U.S.C. §§ 364, Federal Rules

of Bankruptcy Procedure 4001(c), and Local Bankruptcy Rule 6004-4, and in support

thereof, the Debtor affirmatively states the following:

### Jurisdiction

1.     Jurisdiction of this Court over the instant matter is based upon 28 U.S.C.

§§1334 and 157 in that this action arises in and relates to Debtor's bankruptcy case.

2.     This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B),

(K), and (O).

3.     Venue is proper pursuant to 28 U.S.C. §1409.

### Facts of this Case

4.     On March 15, 2017, Debtor filed a petition for relief under Chapter 13 of

the Bankruptcy Code.

5.     Suzanne E. Wade, Esquire is the Chapter 13 Trustee (the "Trustee").

6.     The Chapter 13 plan (the "Plan") has been confirmed by the Court.

7.     The Plan requires payments to the Trustee as follows: $765.00 monthly

for 60 months. Total Plan funding is $45,900.00.

Stephen F. Relyea (VSB #77236)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, VA 23230-1588
Telephone: (804) 358-9900
Counsel for Debtor

## Discussion

8.      The Debtor has an ownership interest in real property located at 5907

Amherst Street, Richmond, VA  23231-4009 (the "Property"), which Property is more

particularly described as follows:

ALL that certain lot, piece or parcel of land, with improvements thereon and appurtenances thereto, lying and being in Henrico County, Virginia, known and designated as Lot 13, Block G, Edge Hill Lawn, on subdivision plat recorded in the Clerk's Office, Circuit Court, Henrico County, Virginia, in Plat Book 12, page 33, to which plat reference is hereby made by a for a more particular description.

BEING the same premises which Richmond Metropolitan Habitat for Humanity, Inc. by deed dated 5/10/2002 and recorded 5/13/2002 in Henrico County in book 3251 on page 995, granted and conveyed unto Michelle Williams.

Parcel Number: 806-709-2233

9.      The Property is encumbered by a deed of trust lien, which deed of trust

secures the payment of a promissory note to Federal National Mortgage Association, by

its loan servicer, Seterus, Inc. (the "Mortgage Lender").

10.      Debtor entered into a previous loan modification agreement with the

Mortgage Lender in 2015.

11.      Debtor desires to modify the terms of the deed of trust and promissory

note with the Mortgage Lender again.

12.      The Mortgage Lender has tendered to Debtor a document detailing the

terms of proposed loan modification (the "Loan Modification Agreement"). A copy of the

Loan Modification Agreement is attached to this motion as an Exhibit and is

incorporated herein by this reference.

13.      The terms of the proposed Loan Modification Agreement are as follows:

a.      The previous principal balance of the loan was $135,183.27, and

the principal balance of the loan immediately after modification will be

$144,027.13;

b.      The interest rate applicable to the loan before modification is

2.625%, and the interest rate of the loan immediately after modification will be

3.875%;

c.      The term of the loan before modification is 276 months, with a

maturity date on May 1, 2038, and the term of the loan immediately after

modification will be 480 months, with a maturity date on July 1, 2058;

d.      The monthly principal & interest portion of the mortgage payment

before modification is $ 690.21, and the monthly principal & interest portion of the

mortgage payment immediately after modification will be $ 493.88 (these

amounts do not include payment for any items other than principal & interest);

e.      The loan modification will result in a lower monthly mortgage

payment. However, Debtor does not anticipate increasing the monthly Plan

payment due to changes in income and expenses;

f.      The modified loan does not include any future payment changes;

g.      The modified loan does include future balloon payments.

$23,627.13 will be due upon maturity of the loan. This amount will not accrue

interest; and

h.      Any and all mortgage arrearages, including pre-petition and post-

petition arrearages, if any, will be re-amortized under the terms of the

modification, and the Trustee would therefore be relieved from making any

further distributions on any arrearage claim filed by the Mortgage Lender.

14.    The proposed Loan Modification Agreement is beneficial to Debtor because it capitalizes and re-amortizes all arrears to bring the loan current, and provides for a more manageable monthly mortgage payment.

WHEREFORE, for the foregoing reasons, Debtor respectfully requests this Honorable Court to enter an order permitting Debtor to modify the current loan with Mortgage Lender in accordance with the terms as set forth herein, and for such other and further relief as the Court deems proper.

Respectfully submitted,

MICHELLE HAWKINS

By Counsel:

/s/ Stephen F. Relyea
Stephen F. Relyea (VSB #77236)
Boleman Law Firm, P.C.
P. O. Box 11588
Richmond, Virginia 23230-1588
Telephone: (804) 358-9900
Counsel for Debtor

## CERTIFICATE OF SERVICE

Pursuant to Local Bankruptcy Rule 6004-4, I hereby certify that on August 31, 2018, I have transmitted a true copy of the foregoing document electronically through the Court's CM/ECF system or by mail to Debtor, the Chapter 13 trustee, and to all creditors or parties in interest who have requested all notices in the case at the addresses listed below (if applicable).

/s/ Stephen F. Relyea
Counsel for Debtor

Federal National Mortgage Association
c/o Seterus, Inc.
P.O. Box 1047
Hartford, CT  06143

Lauren Friend McKelvey, Esq.
Odin, Feldman & Pittleman, PC
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
VIA ECF NOTIFICATION

Jon Michael Ahern, Esq.
Sykes, Bourdon, Ahern & Levy, P.C.
281 Independence Blvd. 5th Floor
Virginia Beach, VA 23462
VIA ECF NOTIFICATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **In re:** | **Case No. 17-31327-KRH** |
| **Michelle Hawkins** | **Chapter 13** |
| **Debtor** | |

## SUMMARY OF THE PROPOSED LOAN MODIFICATION

| | **Original Loan (terms as previously modified in 2015)** | **Modified Loan** |
|---|---|---|
| Principal Amount | $135,183.27 | $144,027.13 |
| Interest Rate | 2.625% | 3.875% |
| Term or Maturity Date | 276 months (5/1/2038) | 480 months (7/1/2058) |
| Monthly Payment | $ 690.21 | $ 493.88 |

2.     The modified loan includes future payment changes and/or balloon payments. The terms of any such future payment changes and/or balloon payments are as follows:

**Payment Changes:** The modified loan does not include any future payment changes.

**Balloon Payments:** The modified loan does include future balloon payments. $23,627.13 will be due upon maturity of the loan. This amount will not accrue interest.

3.     The modification **does not** result in a higher monthly payment.

4.     The modification results in a lower monthly payment. The amount of future plan payments will not be increased.

Collateral Address: 5907 AMHERST ST, RICHMOND VA 23231-4009

Loan Number: ███████  Prepared by Servicer: Seterus, Inc., NMLS ID Number: 787641, Investor Loan Number:
███████

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 11th day of July, 2018, between HAWKINS, MICHELLE ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated April 25, 2008, of the County Records of Henrico and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

5907 AMHERST ST, RICHMOND VA 23231-4009

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of August 01, 2018, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $144,027.13 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  $23,627.13 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $120,400.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.875%, from July 01, 2018. Borrower promises to make monthly payments of principal and interest of U.S. $493.88, beginning on the 1st day of August, 2018, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 3.875% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be July 01, 2058.

3.  Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.  If Borrower makes a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.  In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $124.80 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the New Principal Balance, which will result in a higher total monthly payment.
    (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing August 01, 2018.
    (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

(c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

(d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

6. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and

applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:
    (a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and
    (b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

9. Borrower understands and agrees that:
    (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.
    (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
    (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.
    (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
    (e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f)  Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement, which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g)  Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

10.  Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement, and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien, evidenced by the Security Instrument, under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

11.  Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

12.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

13.  Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

14.  In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____          _____
Seterus, Inc.   Authorized Signer                                         Date

_Michelle D. Hawkins_                                          _7/23/18_
HAWKINS, MICHELLE                                                Date